**KOLLER LAW LLC**
David M. Koller, Esq. (Pa 90119)
Jordan D. Santo, Esq. (Pa 320573)
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHAKOOR HENDERSON,**<br>**Plaintiff,** | : | **Civil Action No.** |
| | : | |
| **v.** | : | **Complaint and Jury Demand** |
| | : | |
| **CRISTO REY PHILADELPHIA HIGH SCHOOL,**<br>**Defendant.** | : | |

## CIVIL ACTION

Plaintiff, Shakoor Henderson (hereinafter "Plaintiff"), by and through his attorney, Koller Law, LLC, bring this civil matter against Cristo Rey Philadelphia High School (hereinafter "Defendant"), for violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the Pennsylvania Human Relations Act ("PHRA"), the Philadelphia Fair Practices Ordinance ("PFPO"), and Section 1981 of the Civil Rights Act ("Section 1981"). In support thereof, Plaintiff avers as follows:

## THE PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.
2. Plaintiff is an adult individual residing in Drexel Hill, PA.
3. Upon information and belief, Defendant Cristo Rey Philadelphia High School is a private, independent, Catholic high school with a location and corporate headquarters at 1717 W

Allegheny Avenue, Philadelphia, PA 19132.

4. At all times relevant hereto, Defendants employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendants employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

**JURISDICTION AND VENUE**

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law and local ordinance claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the

Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.
12. Plaintiff exhausted his administrative remedies under Title VII, the PHRA and the PFPO.
13. On or about May 21, 2025, Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC"), which he digitally signed the same day, alleging race discrimination and retaliation against Defendant.
14. The Charge was assigned a Charge Number 530-2025-08227 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").
15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") via request relative to the Charge and that Notice is dated July 14, 2026.
16. Prior to the filing of this action, Plaintiff notified the EEOC of his intent to proceed with a lawsuit in federal court.
17. Plaintiff files the instant Complaint the first day the ninetieth (90th) day after issuance of the Right to Sue which was not a weekend or federally-recognized holiday[1] as it relates to

[1] Under Federal Rule for Civil Procedure 6(a)(1)(C), the Right to Sue period for filing is extended beyond ninety (90) days to the next day that is not a weekend or legal holiday; in this case, March 9, 2026 (as March 8, 2026, was a Sunday). *See, e.g.*, *Nolan v. TalentBurst, Inc.*, 2024 U.S. Dist. LEXIS 59317 at **8-9 (E.D. Pa. Mar. 29, 2024) (Hodge, J.) (*citing Lewis v. Postmaster Gen. of the U.S.*, No. 21-2958, 2022 U.S. App. LEXIS 877 *1, *1 n.3 (3d Cir. Jan. 12, 2022) (finding that when the ninety-day timeline ended on a Sunday, the plaintiff in the case had until the Monday following to file the complaint)).

his federal law claims and within two (2) years of the issuance of the Right to Sue in this matter as it relates to his PHRA and PFPO claims.

18. Plaintiff has exhausted his administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

## PLAINTIFF'S EMPLOYMENT HISTORY

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.
20. Plaintiff is an African American male.
21. On or about July 1, 2024, Defendant hired Plaintiff in the position of Instructional Coach.
22. Plaintiff was well qualified for his position and performed well.
23. Importantly, Plaintiff was the only African American male on the Instructional Leadership Team.
24. Plaintiff reported directly to Flannery O'Connor, Principal, and was supervised by Sharifa Edwards, a consultant employed by Skyrocket Education, a third-party contractor that exercised functional authority over Plaintiff in the coaching framework implemented by Defendant.
25. Edwards acted as an agent of Defendant in the performance of her duties and in her actions towards Plaintiff.

## DEFENDANT UNDERMINED PLAINTIFF'S SUPERVISORY AUTHORITY

26. Shortly after Plaintiff began enforcing accountability measures as per his job duties, Ms. Chan, Teacher, objected to Plaintiff's feedback.
27. Ms. Chan undermined Plaintiff's role by speaking negatively about Plaintiff to other staff.

28. Instead of supporting Plaintiff's supervisory authority, O'Connor referred the matter to Edwards and asked her to address the situation with Plaintiff.

29. During their meeting, Edwards was confrontational and questioned Plaintiff's decision to hold Ms. Chan accountable.

**EDWARDS WAS REPEATEDLY RUDE AND DISMISSIVE TOWARDS PLAINTIFF**

30. In or around October 2024, Plaintiff began attending recurring instructional leadership meetings with Edwards.

31. During these meetings, Edwards interrupted, spoke over, or dismissed Plaintiff's contributions.

32. Edwards also often made dismissive comments to Plaintiff such as, "you're new", "you're inexperienced", and "you're doing too much", or words to that effect.

33. These comments were made in front of other coworkers and undermined Plaintiff's role and supervisory authority.

34. Edwards' comments also carried racial undertones and suggested that Plaintiff, as an African American male, lacked the legitimacy and/or experience to hold other employees accountable.

**EDWARDS BECAME PLAINTIFF'S INSTRUCTIONAL COACH**

35. In or around December 2024, Defendant officially appointed Edwards as Plaintiff's Instructional Coach.

**EDWARDS FREQUENTLY MADE RACIALLY CHARGED COMMENTS TOWARDS PLAINTIFF**

36. In their first formal coaching session, Edwards characterized herself as a "straight shooter".

37. However, Edwards' communications towards Plaintiff were controlling, abrasive and racially charged.

38. During the first formal coaching session, Edwards made comments about Black identity, stating, "I'm Jamaican, not Black, not African American", or words to that effect.

39. Edwards contrasted her identity with Plaintiff's, stating, "We don't do that", or words to that effect, in response to his coaching methods.

40. These comments showed that Edwards viewed herself, and her racial or cultural values, as superior to those of African Americans.

41. Plaintiff was shocked, humiliated and demeaned by Edwards's comments.

**EDWARDS'S HOSTILITY TOWARDS PLAINTIFF INTENSIFIED**

42. In a subsequent meeting, Edwards accused Plaintiff of "stealing money" from Defendant by being overpaid.

43. In addition, Edwards told Plaintiff that he was "incompetent" and "not doing [his] job", or words to that effect.

44. When Plaintiff attempted to set professional boundaries in response to Edwards's escalating hostility, she reacted by calling Plaintiff "unskilled" and stated that he was not "capable" of performing his job duties.

45. Edwards demanded that Plaintiff use Google Calendar to log all of his tasks.

46. Plaintiff had already been maintaining a physical calendar and had not been informed of Defendant's preferred calendaring method.

**EDWARDS CRITICIZED PLAINTIFF'S SCHEDULE, BUT REFUSED TO PROVIDE ANY GUIDANCE TO HIM**

47. Edwards began scrutinizing Plaintiff's schedule and accused him of failing to meet with all of the Teachers.

48. Plaintiff explained that the four (4) day instructional week at Defendant made it difficult to schedule eighteen (18) teacher meetings within that timeframe.

49. Skyrocket's coaching framework was designed for a traditional five (5) day instructional week.

50. Plaintiff asked Edwards for assistance or an example schedule.

51. However, Edwards refused to provide guidance and continued her criticism of Plaintiff's scheduling practices.

52. Edwards suggested deprioritizing teachers with limited instructional days.

53. Previously, Plaintiff had suggested the same idea earlier in the school year and had been criticized for it.

**DEFENDANT QUESTIONED PLAINTIFF REGARDING HIS USE OF THE SCHOOL GYM, BUT DID NOT DO SO WITH CAUCASIAN EMPLOYEES**

54. Defendant allowed and encouraged faculty and staff to use the school's gym if they had completed their work for the day.

55. However, when Plaintiff used the school gym upon completing his duties, O'Connor criticized Plaintiff's use of the gym and questioned him if he had actually completed his work.

56. By contrast, Defendant allowed Bill Giuliano (Caucasian), Teacher, and Danielle Rossi (Caucasian), Teacher, to use the school gym without issue.

**DEFENDANT QUESTIONED PLAINTIFF WHEN HE MET WITH STUDENTS ALONE, BUT DID NOT DO THE SAME TO NON-AFRICAN AMERICAN STAFF**

57. In addition, O'Connor questioned Plaintiff when he met with students alone as if he was engaging in inappropriate behavior.

58. Importantly, Plaintiff led the Muslim Student Association and met with students as part of this.

59. However, non-African American Teachers and staff members frequently met with students alone and were not questioned about it.

**EDWARDS HARSHLY CRITICIZED PLAINTIFF'S TIME MANAGEMENT, BUT REFUSED TO PROVIDE ANY METHODS TO IMPROVE**

60. On February 4, 2025, Edwards told Plaintiff that his time management was "idiotic" and "stupid" during a Zoom meeting.

61. Plaintiff asked for suggestions on how to improve.

62. However, Edwards refused to provide any concrete examples or coaching strategies, and merely responded that she would do "the smart thing", or words to that effect.

**PLAINTIFF COMPLAINED ABOUT EDWARDS'S DISCRIMINATORY CONDUCT**

63. That same day, Plaintiff filed a formal written complaint to Dawn Carmichael, Human Resources Manager, regarding Edwards's discriminatory conduct and forwarded a copy of his complaint to O'Connor.

**O'CONNOR DISMISSED PLAINTIIFF'S COMPLAINT**

64. On February 5, 2025, Plaintiff met with O'Connor regarding his complaint.

65. However, O'Connor dismissed Plaintiff's complaint and repeated Edwards's criticism of him.

**PLAINTIFF MET WITH CARMICHAEL AND O'CONNOR REGARDING HIS COMPLAINT**

66. On February 11, 2025, Plaintiff met with Carmichael and O'Connor regarding his complaint.

67. During the meeting, Carmichael acknowledged that Edwards's conduct had been unprofessional and inappropriate and that Edwards should no longer coach Plaintiff unless could be resolved.

**O'CONNOR PLACED PLAINTIFF ON A PERFORMANCE IMPROVEMENT PLAN ("PIP")**

68. On February 25, 2025, O'Connor issued Plaintiff a formal written discipline and placed him on a Performance Improvement Plan ("PIP").

69. The written discipline alleged that Plaintiff was not meeting job expectations and was consistently late to work.

70. Plaintiff inquired about the dates that he was allegedly late, but O'Connor was unable to provide any dates.

71. Importantly, Defendant did not discipline coworkers, including, but not limited to, Mr. Tam, Teacher, Ms. Weibel, Teacher, and Ms. Rodriguez, Teacher, all of whom are non-African American, were frequently late to work by approximately one (1) hour.

72. In addition, Plaintiff was subjected to different standards than his coworkers, such as being required to stay later than other employees.

**PLAINTIFF COMPLAINED TO O'CONNOR THAT HE BELIEVED HIS PLACEMENT ON THE PIP WAS RETALIATORY**

73. On March 7, 2025, Plaintiff complained to O'Connor in person that he believed that his PIP was in retaliation for his complaint.

74. However, O'Connor did not meaningfully respond to or address Plaintiff's complaint.

**O'CONNOR ISSUED PLAINTIFF AS SECOND WRITE UP AND PLACED HIM ON THE THIRD STEP OF HIS PIP**

75. On March 10, 2025, O'Connor issued Plaintiff a second write up and stated that he was on the third step of his PIP.

76. Plaintiff had not been informed that the first two (2) steps were allegedly completed.

77. O'Connor claimed that Skyrocket had initiated the prior steps, despite Carmichael having previously stated that third parties could not issue formal disciplines.

78. O'Connor again accused Plaintiff of chronic tardiness without any supporting documentation.

79. Plaintiff responded by identifying Mr. Tam, Ms. Weibel, and Ms. Rodriguez, who were routinely late or non-compliant, but were not reprimanded or disciplined.

80. Plaintiff also complained that multiple Teachers, including, but not limited to, Mr. Tanzola, Ms. Samie, Mr. Sung, Ms. Chikowski, Ms. Chan, Mr. Rodriguez, and Ms. Anderson failed to submit required lesson plans or missed professional meetings and were not reprimanded or disciplined.

81. However, Defendant took no corrective action in response to Plaintiff's evidence of disparate treatment.

**DEFENDANT TERMINATED PLAINTIFF**

82. On May 2, 2025, O'Connor informed Plaintiff that his employment would not be continued for the following school year.

83. One of the reasons given for his termination was that Plaintiff's growth in his position had not been what Defendant needed it to be.

84. Importantly, Plaintiff was meeting the expectations outlined in the PIP and performed every coaching directive provided to him.

85. Importantly, Plaintiff had conducted approximately 330 documented coaching meetings for the school year, while Sabrina Graham, the other Instructional Coach, had averaged approximately 290 sessions.

86. In addition, Plaintiff's coaching directly contributed to measurable academic improvements, including noticeable gains in Defendant's overall Math performance compared to the previous academic year.

87. Plaintiff's employment ended effective June 1, 2025.

88. Defendant discriminated against Plaintiff due to his race and retaliated against him for complaining about the aforementioned discrimination in violation of Title VII, the PHRA the PFPO, and Section 1981.

89. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

**COUNT I – RACE DISCRIMINATION**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED**

90. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

91. Plaintiff is a member of protected classes in that he is African American.

92. Plaintiff was qualified to perform the job for which he was hired.

93. Plaintiff suffered adverse job actions, including, but not limited to termination.

94. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

95. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

96. Defendant discriminated against Plaintiff on the basis of his protected class.

97. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

98. The reasons cited by Defendant for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

99. Defendant's conduct was willful or performed with reckless disregard to his federal statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT II – DISCRIMINATION BASED ON RACE**
**PENNSYLVANIA HUMAN RELATIONS ACT**

100. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

101. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of his protected class (African American).

102. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT III – DISCRIMINATION BASED ON RACE**
**PHILADELAPHIA FAIR PRACTICES ORDINANCE**

103. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

104. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of his protected class (African American).

105. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT IV – RACE DISCRIMINATION**
**SECTION 1981 OF THE CIVIL RIGHTS ACT**

106. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

107. Plaintiff is a member of protected classes in that he is African American.

108. Plaintiff was qualified to perform the job for which he was hired.

109. Plaintiff suffered adverse job actions, including, but not limited to termination.

110. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

111. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

112. Defendant intentionally discriminated against Plaintiff on the basis of his protected class.

113. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

114. The reasons cited by Defendant for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

115. Defendant's conduct was willful or performed with reckless disregard to his federal statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT V – RETALIATION**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED**

116. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

117. Plaintiff engaged in activity protected by Title VII.

118. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

119. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

120. Defendant's conduct/omission was willful or done with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT VI – RETALIATION
## PENNSYLVANIA HUMAN RELATIONS ACT

121. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

122. Plaintiff engaged in activity protected by the PHRA.

123. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

124. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT VII – RETALIATION
## PHILADELPHIA FAIR PRACTICES ORDINANCE

125. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

126. Plaintiff engaged in activity protected by the PFPO.

127. Thereafter, Defendants took adverse employment actions against Plaintiff, including, but not limited to, termination.

128. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT VIII – RETALIATION**
**SECTION 1981 OF THE CIVIL RIGHTS ACT**

129. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

130. Plaintiff engaged in activity protected by Section 1981.

131. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

132. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

133. Defendant's conduct/omission was willful or done with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Shakoor Henderson, requests that the Court grant him the following relief against Defendant:

(a) Damages for past and future wage loss;

(b) Compensatory damages for other economic and non-economic harm including, *inter alia*, mental anguish and/or emotional distress;

(c) Punitive damages;

(d) Reasonable attorneys' fees;

(e) Recoverable costs;

(f) Pre and post judgment interest;

(g) An allowance to compensate for the negative tax consequences of a lump sum award in a single tax year;

(h) Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(i) Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

**RESPECTFULLY SUBMITTED,**

**KOLLER LAW, LLC**

Date: October 13, 2026 **By:** ***/s/David M. Koller***

David M. Koller, Esquire (Pa 90119)
Jordan D. Santo, Esquire (Pa 320573)
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*